UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **1:12 -cr- 0133 SEB -TAB** |
| v. | ) |
| | ) |
| OSCAR PEREZ, | )  -01 |
| JUSTIN ADDLER, | )  -02 |
| a/k/a "Big J" | ) |
| SAMANTHA EVANS, | )  -03 |
| CONNIE CRUZ, | )  -04 |
| JOSE GARCIA, | )  -05 |
| ANTELMO JUAREZ, | )  -06 |
| JOHN RAYMOND SMITH, | )  -07 |
| RUSSELL YERDEN, | )  -08 |
| GUILLERMO BELMARES, | )  -09 |
| a/k/a "Memo" | ) |
| ERIKA TADEO, | )  -10 |
| MICHAEL FOLEY, | )  -11 |
| HALEY BROOKS-MILLER, | )  -12 |
| AMBER RICE, | )  -13 |
| BRIAN MOORE, | )  -14 |
| a/k/a "Hippie" | ) |
| JON DOBBINS, | )  -15 |
| JEREMY GASAWAY, | )  -16 |
| JOSE DEL TORO, | )  -17 |
| a/k/a "Gato" | ) |
| HEATHER HECKMAN, | )  -18 |
| JANICE SPRINGER, | )  -19 |
| SHAMIYA HUNT, | )  -20 |
| JERMAINE COLEMAN, | )  -21 |
| JEROME COLEMAN, | )  -22 |
| ROBERT REED, | )  -23 |
| a/k/a "Little Bobby", | ) |
| GREGORY HART, | )  -24 |
| JOSEPH JOHNSON, | )  -25 |
| JEREMY JOHNSON, | )  -26 |
| STACY COOPER, | )  -27 |
| LEEANN BROCK, | )  -28 |
| JOSHUA MILLER, | )  -29 |
| AUDRA ECKMAN, | )  -30 |

| | | |
|---|---|---|
| HALEY BURRELL, | ) | -31 |
| PETER SPEZIALE, | ) | -32 |
| CURTIS HOLSINGER, | ) | -33 |
| CHARLES COLE, | ) | -34 |
| MICHAEL HENSON, | ) | -35 |
| STANLEY WATSON, | ) | -36 |
| EZEKIEL JONES, | ) | -37 |
| a/k/a "Truth Love" | ) | |
| THOMAS DIXON, | ) | -38 |
| KYLE WHITLOW, | ) | -39 |
| NICKOLAS TROBAUGH, | ) | -40 |
| | ) | |
| Defendants. | ) | |

## I N D I C T M E N T

## COUNT ONE

The Grand Jury charges that:

From in or around June of 2011, continuing through August of 2012, the exact dates

being unknown to the Grand Jury, in the Southern District of Indiana, Indianapolis Division, and

elsewhere, OSCAR PEREZ, JUSTIN ADDLER, a/k/a "Big J", SAMANTHA EVANS, CONNIE

CRUZ, JOSE GARCIA, ANTELMO JUAREZ, JOHN RAYMOND SMITH, RUSSELL

YERDEN,  GUILLERMO BELMARES, aka "Memo", ERIKA TADEO, MICHAEL FOLEY,

HALEY BROOKS-MILLER, AMBER RICE, BRIAN MOORE, a/k/a "Hippie", JON

DOBBINS, JEREMY GASAWAY, JOSE DEL TORO a/k/a "Gato", HEATHER HECKMAN

and JANICE SPRINGER, defendants herein, did knowingly conspire together and with other

persons known and unknown to the Grand Jury, to possess with the intent to distribute and/or

distribute 50 grams or more of methamphetamine, a Schedule II Non-Narcotic Controlled

Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(viii), and 846

## OBJECT AND MEANS OF THE CONSPIRACY

1.     During the course of the charged conspiracy, OSCAR PEREZ, and JUSTIN ADDLER, inmates in the Indiana Department of Corrections, would utilize cellular telephones to oversee and facilitate the acquisition of large amounts of methamphetamine from JOSE DEL TORO and other sources of supply in California. Once acquired, the methamphetamine was sent to Indiana via the U.S. Postal Service, United Parcel Service, or by the use of couriers.

2.     It was also part of the conspiracy that corrections officers would smuggle in controlled substances and cellular telephones to inmates incarcerated in the Indiana Department of Corrections.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the defendants committed the following overt acts, among others.

1.     On or about June 11, 2011, OSCAR PEREZ and a person known to the Grand Jury had a telephone conversation in which PEREZ asked the person known to the Grand Jury if a law enforcement agent working in an undercover capacity (UC-1) can purchase and subsequently sell methamphetamine.

2.     On or about June 13, 2011, OSCAR PEREZ and a person known to the Grand Jury had a conversation in which PEREZ stated, "Man. We got a good price on "ice"......this is not mother (expletive) powder, this is (expletive) "glass".

3.    On or about June 21, 2011, OSCAR PEREZ had a telephone conversation with a person known to the Grand Jury in which PEREZ indicated once the UC-1 deposited money in SAMANTHA EVANS' Chase Bank account, EVANS would obtain an ounce of methamphetamine and send it to Indianapolis, Indiana overnight via U.S. Postal Service Express Mail.

4.    On or about June 21, 2011, UC-1 deposited $1,200 in U.S. currency in SAMANTHA EVANS' Chase Bank account.

5.    On or about June 22, 2011, OSCAR PEREZ, SAMANTHA EVANS, and a person known to the Grand Jury had a telephone conversation in which EVANS indicated when the U.S. Express Mail package containing the methamphetamine would arrive in Indianapolis.

6.    On or about June 22, 2011, OSCAR PEREZ sent a text message with the tracking number for the package containing the methamphetamine.

7.    On or about June 23, 2011, UC-1 retrieved the Express Mail package EVANS sent from California a few days earlier.  The package contained 27.6 grams of pure methamphetamine.

8.    On or about June 26, 2011 through June 29, 2011, OSCAR PEREZ and a person known to the Grand Jury had a series of text messages and telephone conversations in which PEREZ agreed to have SAMANTHA EVANS send UC-1 one quarter pound of methamphetamine in exchange for $4,800 in U.S. currency.

9.    On or about June 29, 2011, OSCAR PEREZ sent a text message to a person known to the Grand Jury in which PEREZ asked if JUSTIN ADDLER was going to get two

4

ounces of methamphetamine from the quarter pound of methamphetamine that SAMANTHA EVANS sent from California to Indiana.

10.     On or about June 29, 2011, UC-1 retrieved the Express Mail package EVANS sent from California a few days earlier. The package contained 115.6 grams of pure methamphetamine.

11.     On or about July 21, 2011 through July 28, 2011, OSCAR PEREZ and a person known to the Grand Jury had a series of text messages regarding PEREZ facilitating the distribution of a quarter pound of methamphetamine in exchange for $4,800 in U.S. currency.

12.     On or about July 25, 2011, OSCAR PEREZ had a telephone conversation with a person known to the Grand Jury in which PEREZ indicated that he wanted to "get rid of the paper trail" and that the $4,800 for the methamphetamine should be sent to SAMANTHA EVANS at PO Box 4146, Salinas, CA 93912. The next day, UC-1 sent $4,800 to SAMANTHA EVANS at the PO BOX in Salinas, California, PEREZ had provided the day before.

13.     On or about July 31, 2011, OSCAR PEREZ sent of a series of text messages to UC-1, in which PEREZ indicated UC-1 should meet with CONNIE CRUZ and provided UC-1 with CRUZ'S cellular telephone number. UC-1 and CONNIE CRUZ then had a series of text messages arranging a meeting between UC-1 and CRUZ so that UC-1 could obtain the quarter pound of methamphetamine from CRUZ.

14.     On or about August 1, 2011, CONNIE CRUZ distributed 111 grams of a mixture and substance containing methamphetamine, of which 103.2 grams was pure methamphetamine.

15.     On or about April 5, 2012 through April 6, 2012, OSCAR PEREZ and a person

known to the Grand Jury had a series of telephone conversations regarding PEREZ facilitating the distribution of a quater pound of methamphetamine in exchange for $4,800 in U.S. currency.

16.     On or about April 10, 2012, OSCAR PEREZ and UC-1 had a series of text messages in which PEREZ indicated his methamphetamine courier (JOSE GARCIA) was coming from north of Indianapolis and would be bringing the quarter pound of methamphetamine to UC-1 and that GARCIA was driving a white vehicle.

17.     On or about April 10, 2012, JOSE GARCIA arrived at 8701 Keystone Crossing in Indianapolis in a white vehicle and subsequently distributed 111.9 grams of a mixture and substance containing methamphetamine, of which 42.6 grams was pure methamphetamine.

18.     On or about April 16, 2012, OSCAR PEREZ and a person known to the Grand Jury had a series of telephone conversations regarding PEREZ facilitating the distribution of a quarter pound of methamphetamine in exchange for $4,800 in U.S. currency.  During the conversation, PEREZ indicated he had different sources for methamphetamine and that he would attempt to obtain better quality methamphetamine.  PEREZ also stated he was "pushing about two" (two pounds of methamphetamine a week) and that he "couldn't produce enough".

19.     On or about April 19, 2012, OSCAR PEREZ and UC-1 exchanged text messages in which PEREZ indicated that his people were on the way to meet UC-1.  A short time later, JOSE GARCIA arrived at 8701 Keystone Crossing in Indianapolis and subsequently distributed 111.4 grams of a mixture and substance containing methamphetamine, of which 40.9 grams was pure methamphetamine.

20.     On or about June 21, 2012, OSCAR PEREZ and ANTELMO JUAREZ had a telephone conversation in which PEREZ discussed that he was concerned he only had like

6

$43,000 in profits from their drug sales. Later in the conversation, PEREZ and JUAREZ discussed how many pounds of methamphetamine they had left for distribution. PEREZ also recounted how he and JUAREZ had distributed a quarter pound of methamphetamine to Johnny Ray (JOHN RAYMOND SMITH) and a quarter pound of methamphetamine to Justin (JUSTIN ADDLER).

21.     On or about June 23, 2012, OSCAR PEREZ and RUSSELL YERDEN had a telephone conversation in which PEREZ told YERDEN he was dealing about two pounds of methamphetamine per week.

22.     On or about June 23, 2012, OSCAR PEREZ and ERIKA TADEO had a telephone conversation in which PEREZ asked TADEO if she was ready to travel to Indianapolis. During the conversation, TADEO indicated she wanted to travel with GUILLERMO BELMARES.

23.     On or about June 24, 2012, OSCAR PEREZ, ANTELMO JUAREZ, JOHN RAYMOND SMITH, RUSSELL YERDEN, GUILLERMO BELMARES and ERIKA TADEO had a series of telephone conversations concerning BELMARES and TADEO transporting methamphetamine from the Elkhart, Indiana area to Indianapolis, Indiana and subsequently distributing the methamphetamine to SMITH.

24.     On or about June 24, 2012, GUILLERMO BELMARES and ERIKA TADEO distributed a quantity of methamphetamine to JOHN RAYMOND SMITH in exchange for approximately $7,000 in U.S. currency.

25.     On or about June 24, 2012, GUILLERMO BELMARES and ERIKA TADEO were in possession of a large amount of U.S. currency.

7

26.     On or about June 25, 2012, JUSTIN ADDLER and OSCAR PEREZ had a telephone conversation in which ADDLER indicated he was ready to obtain more "ice" or pure methamphetamine from PEREZ.

27.     On June 25, 2012, JUSTIN ADDLER and JANICE SPRINGER had a series of telephone conversations in which ADDLER directed SPRINGER to take 9 grams of "B" (heroin) and 28 grams of "I" (ice or pure methamphetamine) to customers in Lafayette, Indiana and to pick up 5 "stacks" ($5,000) from the customers.

27.     On or about June 27, 2012, JUSTIN ADDLER and ANTELMO JUAREZ had a series of telephone conversation in which they discussed an impending methamphetamine transaction.

28.     On or about June 27, 2012, JUSTIN ADDLER and MICHAEL FOLEY had a series of telephone conversations in which ADDLER facilitated FOLEY, HALEY BROOKS-MILLER, and AMBER RICE traveling to the Elkhart, Indiana area to meet with GUILLERMO BELMARES in order to obtain a large amount of methamphetamine.

29.     On or about June 27, 2012, JUSTIN ADDLER and MICHAEL FOLEY had a telephone conversation in which ADDLER asked FOLEY about the methamphetamine FOLEY, BROOKS-MILLER, and RICE had just obtained from GUILLERMO BELMARES. FOLEY told ADDLER the methamphetamine was in one big bag, but that he (FOLEY), MILLER-BROOKS and RICE were separating out the methamphetamine into smaller bags.

30.     On or about June 27, 2012, HALEY BROOKS-MILLER and AMBER RICE were in possession of 109.1 grams of a mixture and substance containing methamphetamine, of which 90 grams was pure methamphetamine.

31. On or about June 29, 2012, JUSTIN ADDLER and BRIAN MOORE had a telephone conversation in which they discussed MOORE traveling to the Elkhart, Indiana area to obtain a large amount of "ice" (pure methamphetamine).

32. On or about June 30, 2012, JUSTIN ADDLER, ANTELMO JUAREZ, and BRIAN MOORE had a telephone conversation about conducting a methamphetamine deal. A short time later, JUAREZ arranged for a courier to deliver a quantity of methamphetamine to MOORE and HEATHER HECKMAN.

33. On or about June 30, 2012, JUSTIN ADDLER and BRIAN MOORE had a telephone conversation about the quality of the methamphetamine MOORE had just obtained. ADDLER later told MOORE to call him when he made it home with the methamphetamine.

34. On or about June 30, 2012, BRIAN MOORE was in possession of 111.7 grams of a mixture and substance containing methamphetamine, of which 79.3 grams was pure methamphetamine.

35. On or about July 1, 2012, JUSTIN ADDLER and HEATHER HECKMAN had a series of telephone conversations in which HECKMAN told ADDLER about BRIAN MOORE'S arrest on June 30th. HECKMAN also told ADDLER that she and MOORE concocted a story to tell the police when they were stopped and that HECKMAN was willing to conceal the methamphetamine that the police found on MOORE. HECKMAN also told ADDLER she knew where MOORE kept a quantity of marijuana and that HECKMAN was willing to sell the marijuana and use the proceeds to post MOORE'S bond.

36. On or about July 7, 2012, JUSTIN ADDLER and JEREMY GASAWAY had a telephone conversation in which ADDLER ordered an ounce of methamphetamine and a cellular

telephone from GASAWAY, which would ultimately be smuggled to ADDLER inside the Wabash Valley Correctional Facility (WVCF) .

37.     On or about July 14, 2012, JON DOBBINS, a correctional officer at the Wabash Valley Correctional Facility (WVCF), was in possession of 20.7 grams of a mixture and substance containing methamphetamine, of which 13.1 grams was pure methamphetamine and a cellular telephone, which DOBBINS was going to clandestinely bring into the WVCF and leave for an inmate.

38.     On or about July 26, 2012, OSCAR PEREZ and JOSE DEL TORO a/k/a "Gato" had a telephone conversation in which PEREZ asked DEL TORO if he could send PEREZ two half pounds of methamphetamine, one half pound at a time.  DEL TORO told PEREZ he could supply the methamphetamine and that for an additional $1,000, SAMANTHA EVANS can take DEL TORO to the location and witness him sending the methamphetamine.

39.     On or about July 26, 2012, JOSE DEL TORO, a/k/a "Gato", went to the United Parcel Service (UPS) store located at 1522 Constitution Blvd. in Salinas, California and presented a package for shipment that was addressed to Allison Abrams, 840 Hannibal Street, Noblesville, Indiana.  Inside the package was approximately 10 ounces of methamphetamine.


All in violation of Title 21 United States Code, Section 846.

## COUNT TWO

The Grand Jury further charges that:

On or about August 1, 2011, in the Southern District of Indiana, Indianapolis Division,

CONNIE CRUZ, a defendant herein, did knowingly distribute 50 grams or more of

methamphetamine, a Schedule II Non-Narcotic Controlled Substance, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

## COUNT THREE

The Grand Jury further charges that:

On or about April 10, 2012, in the Southern District of Indiana, Indianapolis Division,

JOSE GARCIA, a defendant herein, did knowingly distribute 5 grams or more of

methamphetamine, a Schedule II Non-Narcotic Controlled Substance, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii).

## COUNT FOUR

The Grand Jury further charges that:

On or about April 19, 2012, in the Southern District of Indiana, Indianapolis Division,

JOSE GARCIA, a defendant herein, did knowingly distribute 5 grams or more of

methamphetamine, a Schedule II Non-Narcotic Controlled Substance, in violation of Title 21,

United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii).

## COUNT FIVE

The Grand Jury further charges that:

On or about July 14, 2012, in the Southern District of Indiana, Indianapolis Division, JON DOBBINS, a defendant herein, did knowingly possess with intent to distribute 5 grams or more of methamphetamine, a Schedule II Non-Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii).

## COUNT SIX

The Grand Jury further charges that:

From in or around June of 2011, continuing through August of 2012, the exact dates being unknown to the Grand Jury, in the Southern District of Indiana, Indianapolis Division, and elsewhere, OSCAR PEREZ, JUSTIN ADDLER, a/k/a "Big J", SHAMIYA HUNT, ROBERT REED, GREGORY HART, JERMAINE COLEMAN, JEROME COLEMAN, JOSEPH JOHNSON, JEREMY JOHNSON, STACY COOPER, LEEANN BROCK, JOSHUA MILLER, AUDRA ECKMAN and HALEY BURRELL, the defendants herein, did knowingly conspire together and with other persons known and unknown to the Grand Jury, to possess with the intent to distribute and/or distribute 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I Non-Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A)(I), and 846

### OBJECT AND MEANS OF THE CONSPIRACY

1.     During the course of the charged conspiracy, OSCAR PEREZ, and JUSTIN ADDLER, inmates in the Indiana Department of Corrections, would utilize cellular telephones

oversee and facilitate the acquisition of large amounts heroin from a source of supply in the Chicago, Illinois area. Once acquired, the heroin was brought from Illinois to Indiana by the use of couriers where it was, in turn, distributed on the streets in various places in the Southern District of Indiana.

OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the defendants committed the following overt acts, among others.

1.     On or about June 11, 2011, JUSTIN ADDLER and a person known to the Grand Jury had a telephone conversation in which ADDLER indicated he could facilitate the purchase of heroin. ADDLER went on to state he paid $110 per gram of heroin and that he charges people $120 per gram of heroin. ADDLER also said that he has been supplying heroin in Crawfordsville, Indiana for over a year and a half and that he has made "tens of thousands of dollars". ADDLER went on to say he was surprised he didn't have a RICO case on him.

2.     On or about June 16, 2011, JUSTIN ADDLER and a person known to the Grand Jury had a conversation in which ADDLER set up a heroin deal where a law enforcement agent working in an undercover capacity (UC-1) would meet with SHAMIYA HUNT and obtain heroin from HUNT.

3.     On or about June 16, 2011, SHAMIYA HUNT distributed 5.6 grams of heroin to UC-1. HUNT obtained the heroin from JERMAINE COLEMAN, while JEROME COLEMAN served as a look-out in the parking lot of a business located at 8015 Pendleton Pike in Indianapolis, Indiana.

4.    On or about June 16, 2011, JUSTIN ADDLER and ROBERT REED had a telephone conversation in which they discussed the heroin deal that had occurred earlier.

5.    On or about June 21, 2011, JUSTIN ADDLER, SHAMIYA HUNT, and UC-1 had a telephone conversation concerning conducting a heroin deal.  A short time later UC-1 met with SHAMIYA HUNT at the Village Pantry located at 5601 Guion Road in Indianapolis.  After HUNT met JERMAINE and JEROME COLEMAN, HUNT distributed 19.2 grams of heroin to UC-1.

6.    On or about June 30, 2011, JUSTIN ADDLER and a person known to the Grand Jury exchanged a series of text messages in which ADDLER indicated he had put in an order with "Lil' B" (ROBERT REED) for 38 grams of heroin and that the deal was going to be done the following day.

7.    On or about July 1, 2011, at the Village Pantry on Guion Road in Indianapolis, SHAMIYA HUNT met with JEROME COLEMAN and then distributed 38.9 grams of heroin to UC-1.

8.    On or about July 8, 2011, a law enforcement agent working in an undercover capacity (UC-2), JUSTIN ADDLER, ROBERT REED, and GREGORY HART had a telephone conversation regarding an impending heroin deal.  During the conversation, REED instructed UC-2 to meet HART at 46th and Shadeland.

9.    A short time later on July 8, 2011, UC-2 met HART in a Shell gas station located at 4601 N. Shadeland Avenue in Indianapolis, Indiana.  After UC-2 gave HART a sum of U.S. currency, they traveled to the Village Pantry located at 5601 Guion Road in Indianapolis where they met JEROME COLEMAN.  After HART gave JEROME COLEMAN money,

14

COLEMAN handed HART a bag containing heroin. HART, in turn, provided UC-2 with a smaller bag containing 35.5 grams of heroin.

10.     On July 29, 2011, JUSTIN ADDLER, ROBERT REED, GREGORY HART, UC-1 and a person known to the Grand Jury had a telephone conversation regarding an impending heroin deal.

11.     On July 29, 2011, UC-1 met GREGORY HART in the parking lot of West 38th Street and Franklin Road in Indianapolis. After UC-1 gave HART money, HART met with JEROME COLEMAN. After meeting with COLEMAN, HART distributed 39.6 grams of heroin to UC-1.

12.     On September 23, 2011, JUSTIN ADDLER, GREGORY HART, and UC-1 had a telephone conversation regarding an impending heroin deal.

13.     On or about September 23, 2011, UC-1 met GREGORY HART at the Lawrence Landing Apartment complex located at 42nd Street and Shadeland Avenue. After driving to another apartment building, UC-1 gave HART money. HART then met with JEROME COLEMAN. After meeting with COLEMAN, HART distributed 29.7 grams of heroin to UC-1.

14.     On or about April 9, 2012, and April 10, 2012, GREGORY HART and UC-1 exchanged text messages about conducting a heroin transaction.

15.     On or about April 10, 2012, GREGORY HART distributed 26.7 grams of heroin to UC-1.

16.     On or about April 19, 2012, GREGORY HART, SHAMIYA HUNT and UC-1 met in the vicinity of 34th Street and Keystone Avenue in Indianapolis. UC-1 paid money to HUNT and HART subsequently distributed 25.6 grams of heroin to UC-1.

17.     On or about May 4, 2012,  JUSTIN ADDLER and a person known to the Grand

Jury had a series of telephone conversations about JANICE SPRINGER distributing heroin on

ADDLER'S behalf at a Pilot Travel Center in Crawfordsville, Indiana.

18.     On or about May 4, 2012, JANICE SPRINGER distributed 20.7 grams of heroin

in exchange for $2,500.  SPRINGER and ADDLER were in telephone contact throughout the

duration of heroin transaction.

19.     On or about June 1, 2012, SHAMIYA HUNT distributed 15.6 grams of heroin to

UC-1.

20.     On or about June 25, 2012, OSCAR PEREZ, ANTELMO JUAREZ, and JUSTIN

ADDLER had a telephone conversation in which they discussed pooling their financial resources

together to obtain a discounted price on a large amount of heroin from a Chicago based heroin

source of supply.  JUAREZ indicated that he and PEREZ would go in with ADDLER on a whole

"brick" (kilogram) of heroin.

21.     On or about June 28, 2012, JUSTIN ADDLER and JOSEPH JOHNSON had a

telephone conversation in which JOHNSON ordered 17 grams of heroin from ADDLER because

JOHNSON wanted to start dealing heroin in New Castle, Indiana through his brother JEREMY

JOHNSON.

22.     On or about June 29, 2012, JEREMY JOHNSON, JUSTIN ADDLER and

JANICE SPRINGER had a telephone conversation in which ADDLER gave JEREMY

JOHNSON directions to a location in Crawfordsville, Indiana to meet JANICE SPRINGER to

conduct a heroin transaction.  A short time later, SPRINGER distributed 17 grams of heroin to

JEREMY JOHNSON and STACY COOPER on a "fronted" or consignment basis. STACY COOPER would subsequently sell 7 grams of the heroin in the New Castle, Indiana area.

23.    On or about June 30, 2012, AUDRA ECKMAN and JUSTIN ADDLER had a telephone conversation in which ECKMAN and ADDLER discussed ECKMAN meeting with JANICE SPRINGER to obtain a quantity of heroin. ADDLER also asked ECKMAN to pay for the drugs with two $500 "dot" cards.

24.    On or about July 1, 2012, AUDRA ECKMAN met with JANICE SPRINGER and conducted a drug deal at a Wal-Mart in Crawfordsville, Indiana.

25.    On or about July 3, 2012, JOSEPH JOHNSON gave JANICE SPRINGER directions to a residence in New Castle, Indiana during a telephone conversation in which JUSTIN ADDLER also participated. SPRINGER subsequently traveled to the residence and collected 10 grams of heroin and $874 from JEREMY JOHNSON and STACY COOPER.

26.    On or about July 4, 2012, JUSTIN ADDLER and HALEY BURRELL had a telephone conversation in which BURRELL revealed the existence of an FBI investigation into ADDLER'S drug trafficking activities. BURRELL also revealed the identity of an FBI informant to ADDLER.

27.    On or about July 13, 2012, after a series of telephone calls with JUSTIN ADDLER, BRIAN MOORE, LEEANN BROCK, and JOSHUA MILLER were in possession of $6,000 of JUSTIN ADDLER'S money, traveling on I-65 to Chicago to obtain a large quantity of heroin. During the trip, MILLER noticed law enforcement agents conducting surveillance and began driving erratically in an attempt to avoid detection. MOORE subsequently threw the $6,000 out the window of the vehicle.

28.     On or about July 13, 2012, JOSHUA MILLER and JUSTIN ADDLER had a series of telephone conversations with JUSTIN ADDLER in which MILLER told ADDLER he and MICHAEL FOLEY would travel back to the area and attempt to retrieve ADDLER'S $6,000.  MILLER and FOLEY were able to find the money and FOLEY was told by ADDLER that JANICE SPRINGER would come to Lafayette to collect the money and would give him a quantity of heroin as well.  ADDLER subsequently told MILLER, "I'm the drug dealer."

All in violation of Title 21 United States Code, Section 846.

## COUNT SEVEN

The Grand Jury further charges that:

On or about June 16, 2011, in the Southern District of Indiana, Indianapolis Division, SHAMIYA HUNT, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT EIGHT

The Grand Jury further charges that:

On or about June 21, 2011, in the Southern District of Indiana, Indianapolis Division, SHAMIYA HUNT, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

18

## COUNT NINE

The Grand Jury further charges that:

On or about July 1, 2011, in the Southern District of Indiana, Indianapolis Division, SHAMIYA HUNT, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT TEN

The Grand Jury further charges that:

On or about July 8, 2011, in the Southern District of Indiana, Indianapolis Division, JEROME COLEMAN, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT ELEVEN

The Grand Jury further charges that:

On or about July 8, 2011, in the Southern District of Indiana, Indianapolis Division, GREGORY HART, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT TWELVE

The Grand Jury further charges that:

On or about July 29, 2011, in the Southern District of Indiana, Indianapolis Division, GREGORY HART, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT THIRTEEN

The Grand Jury further charges that:

On or about September 23, 2011, in the Southern District of Indiana, Indianapolis Division, GREGORY HART, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT FOURTEEN

The Grand Jury further charges that:

On or about April 10, 2012, in the Southern District of Indiana, Indianapolis Division, GREGORY HART, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT FIFTEEN

The Grand Jury further charges that:

On or about April 19, 2012, in the Southern District of Indiana, Indianapolis Division, GREGORY HART, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT SIXTEEN

The Grand Jury further charges that:

On or about May 4, 2012, in the Southern District of Indiana, Indianapolis Division, JANICE SPRINGER, a defendant herein, did knowingly distribute a mixture or substance containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT SEVENTEEN

The Grand Jury further charges that:

On or about June 1, 2012, in the Southern District of Indiana, Indianapolis Division, SHAMIYA HUNT, a defendant herein, did knowingly distribute a mixture or substance

containing a detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## COUNT EIGHTEEN

The Grand Jury further charges that:

On or about July 4, 2012, in the Southern District of Indiana, Indianapolis Division, HALEY BURRELL, a defendant herein, did corruptly endeavor to obstruct or impede the due administration of justice by revealing the name of an informant and/or by revealing the existence of a pending and on-going FBI investigation of the drug trafficking activities of Justin Addler and others to Addler, in violation of Title 18, United States Code, Section 1503(a).

## COUNT NINETEEN

The Grand Jury further charges that:

On or about July 4, 2012, in the Southern District of Indiana, Indianapolis Division, HALEY BURRELL, a defendant herein, did corruptly obstruct, or attempt to obstruct an official proceeding, to wit: a pending and on-going FBI investigation of the drug trafficking activities of Justin Addler and others, in violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT TWENTY

The Grand Jury further charges that:

On or about June 25, 2012, in the Southern District of Indiana, Indianapolis Division, PETER SPEZIALE, a defendant herein, knowingly and intentionally used a communication facility to facilitate the commission of distribution and/or possession with intent to distribution methamphetamine and/or heroin, an act constituting a felony pursuant to Title 21, United States Code, Section 841(a)(1) under the Controlled Substances Act; to-wit, On or about June 25, 2012, SPEZIALE and JUSTIN ADDLER had a telephone conversation in which ADDLER agreed to supply methamphetamine and heroin to SPEZIALE so that SPEZIALE could sell the methamphetamine and heroin, in violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-ONE

The Grand Jury further charges that:

On or about June 26, 2012, in the Southern District of Indiana, Indianapolis Division, CURTIS HOLSINGER, a defendant herein, knowingly and intentionally used a communication facility to facilitate the commission of distribution of Buprenorphine (Suboxone), an act constituting a felony pursuant to Title 21, United States Code, Section 841(a)(1) under the Controlled Substances Act; to-wit, On or about June 26, 2012, HOLSINGER and JUSTIN ADDLER had a telephone conversation in which HOLSINGER and ADDLER discussed acquiring a quantity of Buprenorphine (Suboxone) inside the Wabash Valley Correctional Facility and subsequently selling the Buprenorphine (Suboxone) to other inmates, in violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-TWO

The Grand Jury further charges that:

On or about July 12, 2012, in the Southern District of Indiana, Indianapolis Division, CHARLES COLE, a defendant herein, did knowingly and intentionally use a communication facility to facilitate the commission of distribution and/or possession with intent to distribute heroin, an act constituting a felony pursuant to Title 21, United States Code, Section 841(a)(1) under the Controlled Substances Act; to-wit, On or about July 12, 2012, COLE and JUSTIN ADDLER had a telephone conversation in which COLE and ADDLER discussed what price ADDLER would charge COLE for one ounce of heroin that was smuggled into the Indiana Reformatory in Pendleton, Indiana.  They also discussed that COLE would sell the heroin to other inmates on ADDLER'S behalf, in violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-THREE

The Grand Jury further charges that:

On or about July 13, 2012, in the Southern District of Indiana, Indianapolis Division, MICHAEL HENSON and STANLEY WATSON, a defendants herein, did knowingly and intentionally use a communication facility to facilitate the commission of distribution and/or possession with intent to distribution methamphetamine, an act constituting a felony pursuant to Title 21, United States Code, Section 841(a)(1) under the Controlled Substances Act; to-wit, On or about July 13, 2012, HENSON, WATSON, and JUSTIN ADDLER had a three-way telephone conversation in which they discussed a correctional officer smuggling an ounce of methamphetamine into the Wabash Valley Correctional Facility in Carlisle, Indiana.  They also

discussed the fact that WATSON would take possession of the smuggled methamphetamine and distribute it to HENSON and ADDLER, in violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-FOUR

The Grand Jury further charges that:

On or about June 21, 2012, in the Southern District of Indiana, Indianapolis Division, KYLE WHITLOW, a defendant herein, knowingly and intentionally used a communication facility to facilitate the commission of distribution and/or possession with intent to distribution methamphetamine and/or heroin, an act constituting a felony pursuant to Title 21, United States Code, Section 841(a)(1) under the Controlled Substances Act; to-wit, On or about June 21, 2012, WHITLOW and JUSTIN ADDLER had telephone conversations in which ADDLER agreed to supply methamphetamine and heroin to WHITLOW on a partially "fronted" or consignment basis, which WHITLOW was going to sell to his customers, in violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-FIVE

The Grand Jury further charges that:

On or about July 16, 2012, in the Southern District of Indiana, Indianapolis Division, NICKOLAS TROBAUGH, a defendant herein, knowingly and intentionally used a communication facility to facilitate the commission of distribution and/or possession with intent to distribution PCP and/or LSD, an act constituting a felony pursuant to Title 21, United States Code, Section 841(a)(1) under the Controlled Substances Act; to-wit, On or about July 16, 2012, TROBAUGH and JUSTIN ADDLER had telephone conversations in which ADDLER agreed to supply "acid" to TROBAUGH.  TROBAUGH then told ADDLER "acid" was selling like "hot cakes" in Crawfordsville , and that TROBAUGH'S customer would take $1,000 worth, in violation of Title 21, United States Code, Section 843(b).

## COUNT TWENTY-SIX

The Grand Jury charges that:

From in or around July 15, 2012, continuing through July 20, 2012,, in the Southern District of Indiana, Indianapolis Division, and elsewhere, OSCAR PEREZ, JUSTIN ADDLER, CONNIE CRUZ, ANTELMO JUAREZ, EZEKIEL JONES a/k/a "Truth Love", THOMAS DIXON, and ERIKA TADEO, defendants herein, did knowingly conspire together and with other persons known and unknown to the Grand Jury, to possess with the intent to distribute and/or distribute 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP), a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(iv), and 846.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the defendants committed the following overt acts, among others.

1.      On or about July 15, 2012, JUSTIN ADDLER and ANTELMO JUAREZ had a telephone conversation in which JUAREZ told ADDLER he had 16 fluid ounces of "acid" and wanted to know how many sheets JUAREZ could make. ADDLER told JUAREZ 100 "hits" per sheet. In a subsequent conversation, JUAREZ told ADDLER he was getting into selling "acid". JUAREZ later asked ADDLER if he would make the sheets of acid for them and ADDLER said he would if the "acid" was brought straight to him.

2.      On or about July 15, 2012, OSCAR PEREZ and THOMAS DIXON had a telephone conversation in which DIXON said he could "pop" (sell) acid very quickly. PEREZ then asked DIXON what the penalty was for "acid" and DIXON said it wasn't as bad as it was as it was for cocaine. ANTELMO JUAREZ joined the conversation and said 16 fluid ounces was worth $2,500, which would sell for $7,000 on the street.

3.      On or about July 16, 2012, OSCAR PEREZ and ERICA TADEO had a telephone conversation in which PEREZ told TADEO that he had something (nothing bad - just a little bottle) and that he needed an address to send it to. TADEO gave PEREZ her address.

4.      On or about July 19, 2012, OSCAR PEREZ and ERICA TADEO had a telephone conversation in which PEREZ told TADEO he would have someone come by and get it. In a later telephone conversation, TADEO said that she has been sick since she opened the package. PEREZ told TADEO someone would be by to pick it up.

5.      On or about July 19, 2012, OSCAR PEREZ and EZEKIEL JONES had a telephone conversation in which JONES asked PEREZ if the "package got there". PEREZ told

JONES "she (TADEO) is unpackaging it now." TADEO joined the conversation and said the package feels wet and smells.

6.　　On or about July 19, 2012, OSCAR PEREZ and EZEKIEL JONES had a telephone conversation in which PEREZ told JONES the outside of the package was moist but the "thing" was dry. TADEO joined the conversation and told PEREZ and JONES that it was 16 fluid ounces. PEREZ said half is mine and half is my brother's.

7.　　On or about July 19, 2012, OSCAR PEREZ and CONNIE CRUZ had a telephone conversation in which PEREZ asked CRUZ if she wanted to deal with the "acid". PEREZ told CRUZ it was at Erica's address and that CRUZ should go pick up the bottle. PEREZ told CRUZ to call him when she got there. Later, PEREZ asked CRUZ if she could "run this (expletive)" and PEREZ said he'd pay her a few hundred after the first sale.

8.　　On or about July 19, 2012, CONNIE CRUZ was in possession of 335 grams of PCP. In a telephone conversation with OSCAR PEREZ, CRUZ said she was concerned about TADEO smelling the "acid" while being pregnant. PEREZ told CRUZ that it was LSD and you have to consume it.

9.　　On or about July 20, 2012, OSCAR PEREZ and THOMAS DIXON had a telephone conversation in which PEREZ told DIXON he would send someone over to DIXON'S place in the morning. In a subsequent telephone conversation, DIXON told PEREZ that there is 100 "hits" per sheet and there could be 100 "cubes" with 100 "hits". DIXON also told PEREZ that he has the clientele and that when that guy brings DIXON the money, that guy will get what he wants.

10.     On or about July 20, 2012, OSCAR PEREZ and THOMAS DIXON had a telephone conversation in which PEREZ asked DIXON if he had any way to measure the liquid. DIXON told PEREZ he had a dropper and the guy said to use 10 milligrams per drop.

11.     On or about July 20, 2012, OSCAR PEREZ and CONNIE CRUZ had a telephone conversation in which PEREZ gave CRUZ directions to THOMAS DIXON'S house.  DIXON joined the conversation and told CRUZ where to park.

12.     On or about July 20, 2012, THOMAS DIXON and CONNIE CRUZ were in possession of 335 grams of a mixture or substance containing a detectable amount of PCP at DIXON'S residence. CRUZ called OSCAR PEREZ and told PEREZ the police were at DIXON'S house.  PEREZ told CRUZ to "dump it if she has to".


All in violation of Title 21 United States Code, Section 846.


## FORFEITURE

1.     Pursuant to Federal Rule of Criminal Procedure 32.2, the United States hereby gives the defendants notice that it will seek the forfeiture of property as part of any sentence in accordance with Title 21, United States Code, Section 853, and Title 18, United States Code, Section 924 and Title 28, United States Code, Section 2461(c).

2.     If convicted of any of the offenses set forth above, OSCAR PEREZ, JUSTIN ADDLER, a/k/a "Big J", SAMANTHA EVANS, CONNIE CRUZ, JOSE GARCIA, ANTELMO JUAREZ, JOHN RAYMOND SMITH, RUSSELL YERDEN, GUILLERMO BELMARES, a/k/a "Memo", ERIKA TADEO, MICHAEL FOLEY, HALEY BROOKS-MILLER, AMBER RICE,

29

BRIAN MOORE, a/k/a "Hippie", JON DOBBINS, JEREMY GASAWAY,  JOSE DEL TORO, a/k/a "Gato", HEATHER HECKMAN, JANICE SPRINGER, SHAMIYA HUNT, JERMAINE COLEMAN, JEROME COLEMAN, ROBERT REED, a/k/a "Little Bobby", GREGORY HART, JOSEPH JOHNSON, JEREMY JOHNSON, STACY COOPER,  LEEANN BROCK, JOSHUA MILLER, AUDRA ECKMAN, HALEY BURRELL, PETER SPEZIALE, CURTIS HOLSINGER, CHARLES COLE, MICHAEL HENSON, STANLEY WATSON, EZEKIEL JONES, a/k/a "Truth Love", THOMAS DIXON, KYLE WHITLOW, NICKOLAS TROBAUGH, the defendants herein, shall forfeit to the United States any and all property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the offenses, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offenses.

3.    Pursuant to Title 21, United States Code, Section 853(p), the court shall order the forfeiture of any other property of the defendants, up to the value of any property described in paragraph 2, if, by any act or omission of the defendants, the property described in paragraph 2, or any portion thereof:

a.    cannot be located upon the exercise of due diligence;
b.    has been transferred or sold to, or deposited with, a third party;
c.    has been placed beyond the jurisdiction of the court;
d.    has been substantially diminished in value; or
e.    has been commingled with other property which cannot be divided without difficulty.

In keeping with the foregoing, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of all forfeitable property as described above in Paragraph 2.

A TRUE BILL:

████████████████████████████

FOREPERSON

JOSEPH H. HOGSETT
United States Attorney

by: _____

Barry D. Glickman
Assistant United States Attorney

31