UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


UNITED STATES OF AMERICA,       )
                                )
             Plaintiff,         ) CAUSE NO.:
                                ) 1:12-CR-00133-SEB/TAB
                                ) Indianapolis, Indiana
      -v-                       ) **July 15th, 2014**
                                ) 10:00 a.m.
SAMANTHA EVANS, MICHAEL HENSON, )
STANLEY WATSON, JOSHUA MILLER   )
and LEEANN BROCK,               )
                                )
             Defendants.        )


**Before the Honorable**

**SARAH EVANS BARKER, JUDGE**


OFFICIAL REPORTER'S TRANSCRIPT OF
CHANGE OF PLEA


**Court Reporter:**     Laura Howie-Walters, FCRR, CSR, RPR
                        Official Court Reporter
                        United States District Court
                        46 E. Ohio Street
                        Room 217
                        Indianapolis, Indiana  46204


PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT PRODUCED BY ECLIPSE NT COMPUTER-AIDED TRANSCRIPTION

## APPEARANCES

**For Government:**  Barry Glickman, Esq.
Assistant U.S. Attorney
United States Attorney's Office
10 West Market Street
Suite 2100
Indianapolis, IN  46204

## FOR DEFENDANTS:

**For Samantha Evans:** James A. Edgar, Esq.
J. EDGAR LAW OFFICES, P.C.
1512 North Delaware
Indianapolis, IN 46202

**For Michael Henson:** Brent Westerfeld
Attorney At Law
6202 North College Avenue
Indianapolis, IN  46204

**For Stanley Watson:** Dorie Ann Maryan
MARYAN LAW
3750 Kentucky Avenue
Suite 101
Indianapolis, IN 46221

**For Joshua Miller:** Mario Garcia
BRATTAIN & MINNIX
151 N. Delaware
Suite 760
Indianapolis, IN  46204

**For Leeann Brock:** Belle T. Choate
CHOATE & HAITH
151 North Delaware Street
Suite 740
Indianapolis, IN  46204

1                    (Open court.)

2           THE COURT:  Morning, all.

3           MR. GLICKMAN:  Good morning, Your Honor.

4           THE COURT:  Good to see you.

5           MR. GLICKMAN:  Good to be here.

6           THE COURT:  It's a pretty morning, isn't it?

7           MR. GLICKMAN:  Yes, ma'am.

8           THE COURT:  It really is.  Nice to see you all.  You

9     may be seated.  To wake up to 59-degree temperatures in

10    Indiana in July is a gift.  So it should make you smile all

11    day.

12           This matter's on the Court's calendar for a series

13    of pleas.  So, thank you, lawyers, for arranging your

14    schedules so we could all be here together on this day.

15           I'll have you, Ms. Rota-Autry, please call each of

16    the defendants in this cause, and then we'll get you arrayed

17    up here in the front of the court so that I can address you

18    more directly.  So would you do that, please.

19                    (Call to order of the Court)

20           THE COURT:  I have her as 3, Samantha Evans as

21    three.

22           COURT CLERK:  She is 4 on -- I apologize, Your

23    Honor, she is 3, Defendant 3 is Samantha Evans; Defendant 28,

24    Leeann Brock; Defendant 29, Joshua Miller; Defendant 35,

25    Michael Henson; and Defendant 36, Stanley Watson.

1              THE COURT:  Okay, very good.

2              Mr. Edgar, good morning, sir.

3              MR. EDGAR:  Good morning, Judge.

4              THE COURT:  Would you bring Ms. Evans to the well of

5    the court over to the far left.

6              And, Miss Choate, good morning again to you.

7              MS. CHOATE:  Good morning, Judge.

8              THE COURT:  Would you bring your client -- does she

9    prefer to be called Miss Brock or Ms. Miller?

10             MS. CHOATE:  Ms. Miller.

11             THE COURT:  Okay.  She's listed as Leeann Brock in

12   the indictment, but how about Brock Miller for purposes of

13   clarity?  Is that okay?

14             MS. CHOATE:  Yes, Judge, that's good.

15             THE COURT:  Can you make it through there?  It's a

16   little tricky.

17             Mr. Garcia, good morning to you.  Would you bring

18   Mr. Joshua Miller forward.

19             And, Mr. Westerfeld, good morning to you, sir.

20   Would you bring Mr. Henson forward.  I think you're going to

21   need to move just a little bit over so we get everybody here.

22             And Ms. Maryan, would you bring Mr. Watson, please?

23             MS. MARYAN:  Yes, Judge.

24             THE COURT:  We've sort of blocked you, Mr. Glickman.

25   If you want to sit in the jury box -- oh, that's better.

1    That's good.  I can still see you.

2           MR. GLICKMAN:  Yes, ma'am, I can see between the

3    two.

4           THE COURT:  If you need to get my attention, you'll

5    have to stand up and say "Yo," or something.  "Yo, Your

6    Honor."

7           MR. GLICKMAN:  Somehow, Your Honor, I can never

8    picture doing that in your courtroom, and I think I'll pass

9    this time.

10          THE COURT:  All right.

11          Good morning again, everyone.  Let me establish that

12   you are who we think you are, and then ask you about the

13   proceedings that are under way this morning.

14          First, Ms. Evans, Samantha Evans, are you the same

15   person who was named by the clerk when she just called this

16   matter?

17          DEFENDANT EVANS:  Yes, ma'am.

18          THE COURT:  Ms. Miller, are you Leeann Brock Miller,

19   the same person who was called by the clerk?

20          DEFENDANT BROCK:  Yes, ma'am.

21          THE COURT:  Mr. Joshua Miller, are you, sir, the

22   same person named by the clerk when she called this matter?

23          DEFENDANT MILLER:  Yes.

24          THE COURT:  Mr. Henson, are you the same Michael

25   Henson who was called by the Clerk when she called this

1  matter?

2          DEFENDANT HENSON:  Correct, Your Honor.

3          THE COURT:  And Mr. Stanley Watson, are you the same

4  person that was called by the clerk?

5          DEFENDANT WATSON:  Yes.

6          THE COURT:  Ms. Evans, how old are you?

7          DEFENDANT EVANS:  Twenty-two.

8          THE COURT:  How far did you go in school?

9          DEFENDANT EVANS:  13 -- 14, I was in my sophomore

10  year in college.

11          THE COURT:  You can read and write the English

12  language, right?

13          DEFENDANT EVANS:  Yes.

14          THE COURT:  Ms. Brock Miller, how old are you,

15  please?

16          DEFENDANT BROCK:  Thirty.

17          THE COURT:  And how far did you go in school?

18          DEFENDANT BROCK:  Twelfth grade, with some college.

19          THE COURT:  So you can also read and write the

20  English language?

21          DEFENDANT BROCK:  Yes, ma'am.

22          THE COURT:  Mr. Miller, how old are you, sir?

23          DEFENDANT MILLER:  Thirty-five.

24          THE COURT:  And how far did you go in school?

25          DEFENDANT MILLER:  I got a bachelor's degree.

1          THE COURT:  So you can read and write the English
2    language as well?
3          DEFENDANT MILLER:  Yes, ma'am.
4          THE COURT:  Mr. Henson, how old are you, sir?
5          DEFENDANT HENSON:  Twenty-nine.
6          THE COURT:  How far did you go in school?
7          DEFENDANT HENSON:  I have my GED.
8          THE COURT:  You can read and write the English
9    language?
10          DEFENDANT HENSON:  Correct, Your Honor.
11          THE COURT:  Mr. Watson, how old are you, sir?
12          THE DEFENDANT:  Sixty-four.
13          THE COURT:  And how far did you go in school?
14          DEFENDANT WATSON:  Twelve.
15          THE COURT:  You can read and write the English
16    language?
17          DEFENDANT WATSON:  Yes.
18          THE COURT:  Very good.
19          I know each of you has been in custody before coming
20    to court today, so I want to ask you this question.  Is anyone
21    under the care of a doctor for any condition that might
22    interfere with your ability to understand and participate in
23    this hearing?  If you are, would you indicate so by just
24    saying "me" or raising your hand, speaking up?
25          Okay, no one has indicated that they have such an

1   issue.

2          Has anyone consumed any substance, alcohol, medicine

3   or narcotic, that would interfere with your ability to

4   understand and participate in this hearing today?  If so,

5   would you indicate?

6          Okay, no one has responded to that.

7          Each of you is named in this indictment that was

8   returned on August 13, 2012, along with various others.

9   Ms. Evans, Mr. Edgar's client, is named in Count 1.  That

10  offense is a conspiracy to distribute a controlled substance,

11  that being 50 grams or more of methamphetamine.  Is that

12  consistent of your understanding of Count 1?

13          DEFENDANT EVANS:  Yes, ma'am.

14          THE COURT:  Ms. Brock Miller and Mr. Miller, you are

15  each charged in Count 6.  That offense is a conspiracy to

16  distribute a controlled substance, which is one kilogram or

17  more of heroin.  That's true for each of you because Count 6

18  applies to each of you.  Is that consistent with your

19  understanding of the charge?

20          DEFENDANT BROCK:  Yes, ma'am.

21          THE COURT:  And yours, too, sir?

22          DEFENDANT MILLER:  Yes, ma'am.

23          THE COURT:  Mr. Henson and Mr. Watson, you're

24  charged in Count 23, and that offense alleges that you used a

25  communications facility to facilitate the distribution of a

1   controlled substance, namely methamphetamine.  Is that

2   consistent with your understanding of that charge?

3                DEFENDANT HENSON:  Correct, Your Honor.

4                THE COURT:  And yours as well, Mr. Watson?

5                DEFENDANT WATSON:  Yes.

6                THE COURT:  Do you waive the formal reading of these

7   counts of the indictment as to each of you today?  If you do

8   not, would you tell me that you'd like to have it read to you?

9                Okay, I see no response, and I hear no response to

10  that request.

11               Before you can be found guilty of these charges, any

12  one of you, the Government has to have evidence to prove the

13  essential legal elements of each of the charges.  That means

14  that there has to be sufficient evidence to prove each of

15  those elements beyond a reasonable doubt before you could be

16  found guilty of any of these charges.

17               That's true whether you go to trial or whether you

18  enter your plea today.  So when we get to the facts, we'll be

19  listening to those facts to see if they are sufficient to

20  allow a finding, a factual finding, as to the essential

21  elements of each of those charges.

22               Now, the possible penalties that you face upon a

23  conviction of these counts are as follows:  Ms. Evans, with

24  respect to Count 1, the period of incarceration is ten years

25  to life imprisonment.  The period of supervised release is no

1    less than five years.  And the fine maximum is $10 million.

2    Do you understand that?

3              DEFENDANT EVANS:  Yes, ma'am.

4              THE COURT:  On Count 6, which applies to you,

5    Ms. Brock Miller and Mr. Miller, the penalties are as

6    follows:  It's a maximum of 40 years of imprisonment, a period

7    of no less than four years for supervised release, and a

8    maximum fine of $4 million.  Do you both understand that?

9              DEFENDANT BROCK:  Yes, ma'am.

10             MR. GLICKMAN:  Your Honor, they're charged in Count

11   6, which is a heroin conspiracy.  That's ten to life.

12             THE COURT:  I took it from the filings, but I'll

13   look again.  So let me see.  Count 6 was heroin, right?  Is

14   that what you just said?

15             MR. GLICKMAN:  Yes, Your Honor.

16             THE COURT:  Let me just look again.

17             MR. GLICKMAN:  It's the same penalties that

18   Ms. Evans, that you informed Ms. Evans of.  It's identical for

19   them as well.

20             THE COURT:  I took it from the filings, so I need to

21   check because that means there's something in the filings

22   that's not right.  For example, Ms. Brock Miller's petition to

23   enter a plea of guilty shows five to 40 years.

24             MR. GLICKMAN:  Okay, the Court said up to 40, Your

25   Honor.  I had a hard time hearing the Court.

1          THE COURT:  Five to 40 years.

2          MR. GLICKMAN:  Yes, that is correct.

3          THE COURT:  So let me just circle back.

4          With respect to you, Ms. Brock Miller, and you,

5   Mr. Miller, the penalties are five to 40 years for the period

6   of incarceration.  The period of supervised release is no less

7   than four years, and the maximum penalty is $4 million.

8          Do you understand that?

9          DEFENDANT BROCK:  Yes, ma'am.

10          THE COURT:  And do you understand it?

11          DEFENDANT MILLER:  Yes, ma'am.

12          THE COURT:  On Count 23, Mr. Henson and Mr. Watson,

13   the penalties set by statute for a conviction are as

14   follows:  A maximum of four years imprisonment, a maximum of

15   $250,000 fine, and a period of three years maximum for

16   supervised release.  Do you understand that, Mr. Henson?

17          DEFENDANT HENSON:  Correct, Your Honor.

18          THE COURT:  And, Mr. Watson, do you, sir?

19          DEFENDANT WATSON:  Yes.

20          THE COURT:  Okay.  When I say these are the

21   penalties that are set by statute, that means they're written

22   into the law that makes this conduct unlawful.  And so as

23   such, they form boundaries or limits on my discretion when it

24   comes time for sentencing.

25          So no lawfully-imposed sentence can go outside these

1   limits.  When we get to the sentencing hearing, which won't be

2   today, it will probably be the next time we meet, we'll go

3   through a sentencing guideline determination process.  We'll

4   look at the statutory factors under 3553(a).  We'll consider

5   your plea agreements as well and make a sentencing decision,

6   but whatever sentencing decision is made will be within the

7   statutory limits because, as I say, those are the lawful

8   boundaries on my discretion.

9            Is there anyone who doesn't understand that or would

10  like further explanation?

11           Okay, I see no hands responding to that.

12           Let me inquire.  Ms. Choate, did Ms. Brock Miller

13  not have a plea agreement?

14           MS. CHOATE:  She did, Judge.

15           THE COURT:  She does have a plea agreement?  Do we

16  have that plea agreement memo?

17           MS. CHOATE:  I sent it to Mr. Glickman because he

18  had not signed it.

19           THE COURT:  That's the only one I didn't review

20  prior to the hearing because I didn't have it.  Mr. Glickman's

21  had a lot of paper to keep track of.  Do you have a copy of it

22  there, Miss Choate?

23           MS. CHOATE:  I do have a copy.  It's not signed by

24  Mr. Glickman.

25           THE COURT:  Well, it's okay if you're sure it's the

1  final version.  Just shoot it up here and I can review it, I

2  think, fairly quickly.

3          MS. CHOATE:  (Handed document.)

4          THE COURT:  I need to ask because now we have a

5  discrepancy in the plea agreement with respect to the

6  punishment.  This says on Count 6 that the term of

7  imprisonment is not less than ten years and not more than

8  life, and I just informed --

9          MR. GLICKMAN:  I believe -- I'm sorry, Your Honor.

10 Miss Choate gave you the wrong copy.  I've got the copy

11 that --

12         THE COURT:  I'll hand it back to you.  Come right

13 through there.  I think you can make it.

14         MS. CHOATE:  Thank you, Judge.

15         THE COURT:  Okay.  Thank you now.

16         Well, this has the same provision.

17         MS. CHOATE:  If I might, Judge, the issue is the

18 plea agreement, rather than what she was originally charged

19 with, calls for a plea to the five to 40, less than a kilo,

20 but more than a hundred grams.

21         THE COURT:  But a lesser-included offense?

22         MS. CHOATE:  Yes.

23         THE COURT:  So on the petition, where it says five

24 to 40 years, that's actually the plea agreement?

25         MS. CHOATE:  That's the plea agreement, Judge.

1          THE COURT:  Is that right, Mr. Glickman?

2          MR. GLICKMAN:  It's on the second page of the plea

3   agreement, Your Honor.  Plea agreement, yes.

4          THE COURT:  Oh, sorry.  There it is, okay.

5          Does your client have a lesser-included charge as

6   well, Mr. Garcia?

7          MR. GARCIA:  Yes, Your Honor.  I was going to say

8   ditto for us.  The statutory penalty is ten to life; however,

9   on page two, it does reflect that he's pleading to a lesser

10  with a sentencing range of five to 40, and that is our

11  understanding.

12         THE COURT:  Right, because he has a (c)(1)(c)?

13         MR. GARCIA:  Correct.

14         THE COURT:  I got that.  Okay, let me just back up

15  in an excess of caution here.  When I told you about the

16  statutory penalties, the statutory penalties are as they're in

17  the plea agreement, that the term of imprisonment, if you

18  didn't have a plea agreement, so there was no basis on which

19  to do a lesser-included offense, the offense that you're

20  charged with carries a punishment of not less than ten years

21  and not more than life, and a fine of $10 million and a term

22  of supervised release of not less than five years.

23         Your plea agreement is such that it brings you down

24  to the ranges I told you before, five to 40 years, because it

25  brings the quantity of heroin down to less than a kilogram,

1    and supervised release of no less than four years and a

2    maximum fine of 4 million.

3            Do you both understand that?  That's applicable to

4    Count 6 and therefore as to both of you Millers; is that

5    right?

6            DEFENDANT HENSON:  Yes, ma'am.

7            DEFENDANT BROCK:  Yes, ma'am.

8            THE COURT:  Okay, and that's how your lawyers have

9    explained it to you as well; is that true?

10           DEFENDANT HENSON:  Yes.

11           DEFENDANT BROCK:  Yes.

12           THE COURT:  Okay, good.  I think we're all on the

13   same page.  Now let me look at the plea agreement just a

14   second.

15           So Ms. Miller also has an 11(c)(1)(c?)

16           MS. CHOATE:  She does, Judge.

17           THE COURT:  Okay.  I've reviewed the plea agreement.

18   Now, do you need this copy back?

19           MR. GLICKMAN:  No, Your Honor.

20           THE COURT:  I'll keep it with my paper files here.

21           So let me address the plea agreements.  Each of you

22   has a written plea agreement that you've executed and filed

23   with the court that reflects your agreement with the

24   Government as to the various obligations that each has at the

25   time of sentencing.

1          So is what's written in the written form that you've

2   signed the entire agreement as you know it to exist; is that

3   true for you, Ms. Evans?  What you read and signed as the

4   memo, is that the entire agreement as you know it to exist?

5          DEFENDANT EVANS:  Yes, ma'am.

6          THE COURT:  Ms. Brock Miller, is what's written and

7   filed with the court and signed by you the entire agreement as

8   you know it to exist?

9          DEFENDANT BROCK:  Yes, ma'am.

10          THE COURT:  Mr. Miller, is the written agreement

11   that you've signed the entire agreement as you know it to

12   exist?

13          DEFENDANT MILLER:  Yes, ma'am.

14          THE COURT:  Mr. Henson, is the written agreement

15   that you've signed the entire agreement as you know it to

16   exist between the Government?

17          DEFENDANT HENSON:  Correct, Your Honor.

18          THE COURT:  And, Mr. Watson, is that true for you,

19   too, the written document reflects the entire agreement?

20          DEFENDANT WATSON:  Yes.

21          THE COURT:  Did anyone persuade any of you against

22   your will to enter into this agreement with the Government?

23   If so, would you indicate that you want to address that

24   matter?

25          Hearing nothing, I'll ask the same question a

1    slightly different way.  Was the decision to enter into this

2    plea agreement, in each of your cases, a decision you made

3    freely and voluntarily after you considered the advice of

4    counsel, but otherwise on your own?  If that wasn't true,

5    would you tell me now, please?

6             Okay, no hands are raised in response to that.

7             I just want to hit the highlights of the plea

8    agreements.  There's no reason for me to read them all back

9    but it will be important that we're all operating on the same

10   understanding of the terms of the plea agreement.

11            So with respect to your plea agreement, Ms. Evans,

12   you've left the sentencing decision to me to make.  I'll hear

13   from everybody, of course, and take into account all the

14   factors when it's time to impose a sentence, but the sentence

15   that's imposed will be, in the final analysis, mine to make.

16   Is that how you intended it to be?

17            DEFENDANT EVANS:  Yes, ma'am.

18            THE COURT:  The Government's not going to increase

19   the base offense level from what's written in the plea

20   agreement, and there's also a provision in the plea agreement

21   that indicates your intention to waive your right to appeal

22   the sentencing decision.  Do you remember those provisions of

23   your plea agreement?

24            DEFENDANT EVANS:  Yes, ma'am.

25            THE COURT:  As I've reviewed the plea agreements, it

1  appears to me that each of you has, as a part of your plea

2  agreement, an appeal waiver, which means that you're giving up

3  your right to appeal the sentencing decision that's made.  So

4  let me speak to all of you about that particular provision.

5           The right to appeal the decision as to your sentence

6  is a valuable right.  It has meaning.  It matters.  And so

7  it's a right that is yours, that you can fully exercise if you

8  choose to, but like other legal rights, you can give it up in

9  whole or in part as long as you choose to do that, as long as

10  you know what you're doing and do it voluntarily, and you

11  accept the consequences of that decision.

12           So in each of your cases where the plea agreement

13  includes this waiver, or this giving up of your right to take

14  an appeal, is that how you understood that, Ms. Evans?

15           DEFENDANT EVANS:  Yes, ma'am.

16           THE COURT:  And do you choose to give up that right

17  to appeal?

18           DEFENDANT EVANS:  Yes, ma'am.

19           THE COURT:  Ms. Brock Miller, is that how you

20  understood is it as well?

21           DEFENDANT BROCK:  Yes, ma'am.

22           THE COURT:  And do you choose to give up that right

23  to appeal?

24           DEFENDANT BROCK:  Yes, ma'am.

25           THE COURT:  Mr. Miller, is that how understood it,

1  sir?

2              DEFENDANT MILLER:  Yes, ma'am.

3              THE COURT:  You choose to give up your right to

4  appeal the sentencing decision?

5              DEFENDANT MILLER:  Yes, ma'am.

6              THE COURT:  Mr. Henson, is that true for you as well

7  that you understood it that way, sir?

8              DEFENDANT HENSON:  Correct, Your Honor.

9              THE COURT:  And do you choose to give up your right

10 to appeal the sentencing decision?

11             DEFENDANT HENSON:  Correct, Your Honor.

12             THE COURT:  Mr. Watson, with you, sir, is that how

13 you understood it with respect to your right to appeal?

14             DEFENDANT WATSON:  Yes.

15             THE COURT:  Do you wish to give up that right?

16             DEFENDANT WATSON:  Yes.

17             THE COURT:  Did anyone have any circumstance or

18 reference that persuaded you against your will to give up that

19 right?  If so, would you say so now, please.

20             Okay, no one has spoken to that effect.

21             I do have a question about those who have entered

22 into 11(c)(1)(c) agreements.  That would be you, Ms. Miller,

23 and you, Mr. Miller, and you, Mr. Watson.

24             I want to talk to you about that 11(c)(1)(c)

25 agreement.  That reference to 11(c)(1)(c) is a reference to a

1    rule of procedure, a criminal rule.  So you don't need to

2    recognize it as such, but the lawyers and I know what that

3    means, and I'm going to explain to you what that means.

4             An 11(c)(1)(c) agreement is a binding plea agreement

5    between you and the Government.  So you have reached an

6    agreement between yourselves as to the recommendation you'll

7    make to me at the time of sentencing as to what a reasonable

8    sentence is.

9             Since it is a binding plea agreement, my options are

10   few.  I can accept that recommendation or I can reject it.  If

11   I accept it, it will be because I agree as well that that's a

12   reasonable sentence.  If I reject it, it will be because for

13   some reason that I'll explain to you at the time, I think it's

14   unreasonable.  And that, of course, means under law.

15   Reasonable or unreasonable means under law.

16            So I'll explain it to you at the time but that's the

17   effect of an 11(c)(1)(c) agreement.  I either take what you

18   give me and say okay, or I reject it.  If I reject it, you go

19   back basically to square one.  Then you decide if you want to

20   renegotiate your plea agreement or if you want to go to trial.

21            So is that how you understood the 11(c)(1)(c)

22   procedures, Ms. Brock Miller?

23            DEFENDANT BROCK:  Yes, ma'am.

24            THE COURT:  Mr. Miller, is that how you understood

25   it, too, sir?

1            DEFENDANT MILLER:  Yes, ma'am.

2            THE COURT:  Mr. Watson, is that how you understood

3    it?

4            DEFENDANT WATSON:  Yes.

5            THE COURT:  So the question I want to ask the

6    lawyers with respect to the (c)(1)(c) agreements, which

7    involves the three defendants I just named, there's a waiver

8    of appeal that's a blanket waiver.  And so I'm asking for

9    clarification because ordinarily when I see a (c)(1)(c)

10   agreement with the waiver, it's tied to the Court's acceptance

11   of the (c)(1)(c).

12           So when it's written as a blanket waiver, it could

13   confuse the matter because it could suggest that you've

14   given up your right even if I decline to accept the (c)(1)(c).

15   So I need some clarification from you, Mr. Glickman, I guess,

16   and then each of the defense lawyers; is the waiver of appeal

17   tied to my acceptance of the (c)(1)(c) or is it a blanket

18   waiver?

19           MR. GLICKMAN:  It's tied to acceptance of the

20   (c)(1)(c), Your Honor.

21           THE COURT:  Is that your understanding, too,

22   Ms. Choate?

23           MS. CHOATE:  It is judge.

24           THE COURT:  And is it yours as well, Mr. Garcia?

25           MR. GARCIA:  Yes, Your Honor.

1          THE COURT:  And yours, Ms. Maryan?

2          MS. MARYAN:  It is.

3          THE COURT:  Then I understand it perfectly clearly

4  now myself.  I want to circle back and speak to you,

5  Mr. Henson, for a moment because you don't have a (c)(1)(c)

6  agreement.  You have an agreement that, like Ms. Evans leaves

7  the decision to me to make with respect to the sentence.  Is

8  that how you intended to do that?

9          DEFENDANT HENSON:  Correct, Your Honor.

10          THE COURT:  And you understand that I'll follow the

11  usual procedures.  I'll hear from everyone and take it all

12  into account, but otherwise it will be a decision that I make;

13  is that how you understand it?

14          DEFENDANT HENSON:  Correct, Your Honor.

15          THE COURT:  Very good.

16          Do any of you have any questions you want to ask me

17  about your plea agreements?

18          Yes, sir, Mr. Henson.

19          DEFENDANT HENSON:  Can you give me a low end?

20          THE COURT:  That will be a sentencing decision.  I

21  understand why that might be first and foremost on your mind

22  today, and we'll get there.  I'm not a bit surprised to hear

23  that that's on your mind.  So I don't have an answer for you

24  today, but we'll get there.

25          Anybody else have a question about your plea

23

1   agreements?  Okay.

2            Ms. Evans, Mr. Edgar's your court-appointed counsel;

3   is that true?

4            DEFENDANT EVANS:  Yes, ma'am.

5            THE COURT:  Are you satisfied with his

6   representation?

7            DEFENDANT EVANS:  Yes, ma'am.

8            THE COURT:  Ms. Brock Miller, Ms. Choate is your

9   court-appointed counsel; is that true?

10            DEFENDANT BROCK:  Yes, ma'am.

11            THE COURT:  And are you satisfied with her

12   representation?

13            DEFENDANT BROCK:  Yes, ma'am.

14            THE COURT:  Mr. Miller, Mr. Garcia is your

15   court-appointed counsel; is that true?

16            DEFENDANT MILLER:  Yes, ma'am.

17            THE COURT:  Are you satisfied with his

18   representation?

19            DEFENDANT MILLER:  More than satisfied.

20            THE COURT:  That's good to hear.

21            Mr. Henson, Mr. Westerfeld is your court-appointed

22   counsel, true?

23            DEFENDANT HENSON:  Correct, Your Honor.

24            THE COURT:  Are you satisfied with his

25   representation?

1          DEFENDANT HENSON:  He should represent the world.

2          THE COURT:  He'd be a good one to do it.

3          Let's see, Mr. Watson, Ms. Maryan is your

4    court-appointed counsel; is that true?

5          DEFENDANT WATSON:  Yes.

6          THE COURT:  Are you satisfied with her

7    representation?

8          DEFENDANT WATSON:  Absolutely.

9          THE COURT:  Let me say to each of you that each of

10   these lawyers is well known to this judge because they

11   represent clients on a regular basis before me and the other

12   judges of our court.  So I know, and all of our judges in this

13   court know, that they are well qualified and able lawyers, but

14   no lawyer, even the best lawyers, can make up their advice by

15   dreaming it up.  They don't pull it out of thin air.

16         They give advice to their clients, such as you,

17   based on the information you give them, the account of the

18   facts that surround these charges.  So the first obligation is

19   yours to make a full and truthful explanation of the facts as

20   you know them with respect to the charges against you.

21         So if you've done that, you can count on their legal

22   advice.  Have you told Mr. Edgar everything about your

23   involvement in this offense, Miss Evans?

24         DEFENDANT EVANS:  Yes, ma'am.

25         THE COURT:  Ms. Brock Miller, have you told

1   Miss Choate everything about your involvement in this offense?

2          DEFENDANT BROCK:  Yes, ma'am.

3          THE COURT:  Mr. Miller, have you told Mr. Garcia

4   everything about your involvement in this offense?

5          DEFENDANT MILLER:  Yes, ma'am.

6          THE COURT:  Mr. Henson, have you told Mr. Westerfeld

7   everything about your involvement in this offense?

8          DEFENDANT HENSON:  Correct, Your Honor.

9          THE COURT:  Mr. Watson, have you told Ms. Maryan

10  everything about your involvement in this offense?

11         DEFENDANT WATSON:  Yes.

12         THE COURT:  Since you all have then, respectively,

13  you can all confidently rely on the legal advice you've

14  received in the past and will continue to receive throughout

15  these proceedings.

16         Let me explain to you what rights would be yours and

17  what procedures we would follow if you did not plead guilty to

18  the charge, or a charge, against you.  If you did not plead

19  guilty, then the matter would be set down for a trial.  In

20  fact, you probably know it's already on the trial calendar for

21  a week from now, more or less.

22         Prior to the commencement of trial, we send out

23  summonses to people who live here in central Indiana.  You

24  know you're in federal court today, and we are headquartered

25  here in Indianapolis, but we draw our jurors from across the

1  central part of the state.  And so using the public documents

2  in the counties that are here in the central part of this

3  state, we use a computer to select the potential jurors to

4  come to serve in your case to hear and decide the matters that

5  are at issue.

6         The jurors are not hand picked.  It's done by a

7  blind computer draw.  So when they get their summons, they are

8  simply directed to come, and when they get here, the first

9  order of business is for us to inquire as to their fitness and

10  availability to serve as jurors to hear and decide your case.

11        Whether a person qualifies to serve on a jury turns

12  primarily on whether they can be fair and impartial.  Fair and

13  impartial, in this context, means that they have to be able

14  and willing to render a verdict just on the evidence that's

15  presented during the trial and follow my instructions on the

16  law.

17        So when we go through that initial questioning,

18  that's what we're listening for, to see if they are able and

19  willing to serve in that way in order to be impaneled as a

20  juror.

21        When we have twelve people about whom we have a high

22  level of confidence that they can be fair and impartial, we

23  will impanel them as a group to hear and decide the case.  In

24  that way, they'll be positioned to resolve the issues as they

25  pertain to each of you individually.

1          At that point, Mr. Glickman, on behalf of the

2    Government, goes forward with the Government's evidence in an

3    effort to prove up the charge or charges against you.  The

4    Government's obligation is to prove them beyond a reasonable

5    doubt, which means that the evidence has to have enough

6    convincing force to convince a jury that you're guilty as

7    charged beyond a reasonable doubt.

8          So Mr. Glickman will shoulder that responsibility in

9    an effort to convince the jury of that by calling witnesses

10   that the Government's identified and present whatever evidence

11   they've gathered in the course of their investigation.

12         As each witness is called and Mr. Glickman finishes

13   his questions, your lawyers can cross-examine those witnesses.

14   As he proffers evidence for the jury to consider, if your

15   lawyers are concerned that the evidence is not consistent with

16   or violates the rules of evidence, the lawyer can object and

17   I'll make a ruling as to whether the jury can consider the

18   challenged evidence.

19         After the Government calls all of its witnesses and

20   presents its evidence, and Mr. Glickman states to the jury and

21   to all of us that the Government rests, then that means he's

22   finished his case-in-chief, and the action shifts to any of

23   you or all of you.

24         At that point, you are entitled to testify in your

25   own defense and/or call witnesses on your behalf.  You don't

1   have to testify or call witnesses.  You're permitted to, but

2   you're not required to.  Whether or not you put on any

3   evidence, the jury's responsibility is going to be the same.

4   Has the Government proven the case beyond a reasonable doubt?

5           You don't have to prove your innocence at trial.

6   That's presumed.  You don't have to disprove the Government's

7   case.  So if you choose not to call witnesses, although you're

8   permitted to, and you have the Court's subpoena power

9   available to you the same as the Government to bring in your

10  witnesses, but if you choose not to put on evidence or call

11  witnesses, if you choose not to testify, I instruct the jury

12  that that's your right, and they can't hold that against you

13  in the sense they can't make their decision on that basis.

14          As I said, whether or not you put on any evidence,

15  yours or your witnesses, the jury's responsibility is going to

16  be the same.  It has to decide has the Government proven the

17  case beyond a reasonable doubt.

18          So if you choose to testify, you may.  Then your

19  lawyer will lead off with the questions on your behalf.  The

20  other lawyers can cross-examine.  Mr. Glickman can

21  cross-examine.  Same with your witnesses.

22          After all the evidence is presented, the lawyers

23  make closing arguments, the jury will hear my instructions on

24  the law --

25          Do you need to sit down, Mr. Watson?

1          DEFENDANT WATSON:  Yes.

2          THE COURT:  Would you feel better?  Go ahead.

3 That's fine. Just pull that chair up there.

4          DEFENDANT WATSON:  Thank you, Judge.

5          THE COURT:  Same for any of you as well.  If you get

6 a little wobbly, better you sit down.  Okay?

7          Let's see, I was saying that after the evidence is

8 presented, the lawyers make closing arguments.  I give the

9 jury instructions on the law, and they include these things

10 we've just talked about, that you're presumed innocent.  The

11 Government has to prove your guilt as charged beyond a

12 reasonable doubt, so forth and so on.

13          There are quite a number of other instructions, but

14 one other important one I'll mention this morning is that I

15 tell the jury they have to all 12 agree.  Their verdict must

16 be unanimous.

17          So they go out the door at the conclusion of those

18 proceedings, up the stairs where they deliberate in private.

19 They leave just as I came in this morning.  And we wait for

20 their verdict.  When they notify us that they've reached a

21 unanimous verdict, we bring the jury back, you are called

22 back, we're all here, and they announce what their verdict is.

23          If they find you guilty of the charge or charges

24 against you, I'll set the matter down for sentencing at some

25 future time.  If they find you not guilty of all of the

1  charges, I'll dismiss this case as to you, relieve you of any

2  terms of bond, you'll be free to go.

3          If for some reason on a particular charge they can't

4  all agree, I'll declare a mistrial, and the Government will

5  decide whether to try the case again to another jury.

6                  (Off-the-record discussion.)

7          THE COURT:  After the trial, after the jury verdict,

8  after the sentencing hearing, if you're concerned that your

9  rights hadn't been protected properly during the trial, you

10  can raise those issues with the Court of Appeals.

11          The Court of Appeals that reviews the trials that

12  occur here and the work that occurs in our court sits in

13  Chicago.  Three judges of that court review the record of our

14  proceedings.  You see our court reporter's making a record of

15  this hearing, and she would make a record of the entire

16  proceedings, first by her stenographer notes, and then by

17  creating a transcript.  And the Court of Appeals judges, with

18  the help of the lawyers, review those issues to see if

19  everything happened in a legally-acceptable way.

20          If the Court of Appeals affirms your convictions and

21  you're concerned still that your rights weren't properly

22  protected during the trial, you can ask the Supreme Court of

23  the United States in Washington to review the decision of the

24  Court of Appeals and the trial that occurred here.

25          I say you can ask the Supreme Court.  There are only

1  nine justices, and they're asked to take cases from all over

2  the country.  They can't possibly take them all, but you would

3  have a right to ask them to consider yours.

4          So if all the steps played out in those procedures,

5  you would have a trial here, a first level of review at the

6  Court of Appeals, and potentially a second layer of review at

7  the Supreme Court.

8          So that's an explanation of the procedures we would

9  follow and the rights that would be yours if this matter went

10 to trial.  Is there anyone who needs to inquire as to any of

11 those matters because you don't understand it well or you'd

12 like some clarification?

13         Okay, I see no hands raised.  Do you all understand

14 my explanation?

15         DEFENDANT HENSON:  I do.

16         THE COURT:  Good.  Do you have any questions you

17 want to ask me or your lawyers about any of these matters?

18         Is what I've told you basically what your lawyers

19 have told you in preparing you for today?  If that's not true,

20 would you tell me and I'll pursue it.

21         Okay.  It appears that everybody's gone down this

22 road before with your own lawyers.  That's good.  That's what

23 we expect.

24         So with respect the facts that underlie these

25 charges, each of you has entered into a summary of the facts,

1   and has caused that written summary to be filed with me that

2   reflect the factual basis for the charges against you.

3           So let me just ask, Mr. Glickman, I'll ask this in a

4   generic way with respect to these five defendants.  As you

5   have prepared and summarized the evidence as to each, is the

6   evidence that you've summarized as to each the evidence the

7   Government's prepared to adduce if the matter goes to trial as

8   to each defendant?

9           MR. GLICKMAN:  Yes, Your Honor.

10          THE COURT:  If your agent were to testify under oath

11  as to the facts relating to the charge against each of these

12  defendants, are the facts that are summarized here the facts

13  that he would testify to?

14          MR. GLICKMAN:  They are, Your Honor.

15          THE COURT:  And in each instance, is it your

16  judgment that these facts, if presented to a reasonable jury,

17  would support a conviction as to the essential elements of

18  each of charges against each of these defendants beyond a

19  reasonable doubt?

20          MR. GLICKMAN:  Absolutely, Your Honor.

21          THE COURT:  Let me ask questions of you lawyers now.

22  Mr. Edgar, I know you have reviewed the discovery that the

23  Government has pulled together and made your own

24  investigations and conducted your own research.  With respect

25  to the factual summary of the charges that pertain to

1  Ms. Evans, are you also persuaded that that evidence is

2  available to the Government if the matter went to trial?

3          MR. EDGAR:  Yes, Your Honor.

4          THE COURT:  And that it would support a verdict of

5  guilty as charged with respect to your client, Ms. Evans?

6          MR. EDGAR:  We agree with that, Judge.

7          THE COURT:  And you so advised her; is that true?

8          MR. EDGAR:  Yes, Your Honor.

9          THE COURT:  Miss Choate, I know you, too, have

10 reviewed the Government's evidence.  Are you persuaded that

11 the summary reflects the evidence that the Government has

12 available to it if the matter went to trial as to Miss Brock

13 Miller?

14         MS. CHOATE:  Yes, Your Honor.

15         THE COURT:  And that it would support a verdict of

16 guilty with respect to Count 6 if a jury were so to conclude?

17         MS. CHOATE:  Yes, Your Honor.

18         THE COURT:  That's how you have advised Miss Brock

19 Miller?

20         MS. CHOATE:  Yes, Your Honor.

21         THE COURT:  Mr. Garcia, I'm confident you also

22 reviewed the Government's evidence.

23         MR. GARCIA:  Yes, Your Honor.

24         THE COURT:  Are you persuaded as well that the

25 summary of the evidence and the stipulated factual basis is

1   available to the Government if the matter went to trial as to

2   your client?

3          MR. GARCIA:  I am, Your Honor.

4          THE COURT:  And that it would suffice to support a

5   verdict of guilty as to Count 6 with respect to Joshua Miller?

6          MR. GARCIA:  Yes, Your Honor.

7          THE COURT:  And you've so advised Mr. Miller?

8          MR. GARCIA:  Yes, Your Honor.

9          THE COURT:  Mr. Westerfeld, I know that you will

10  have reviewed the evidence as well, so are you persuaded that

11  the evidence as summarized as to Mr. Henson in the stipulated

12  factual basis is available to the Government if the matter

13  went to trial on Count 23 with respect to him?

14         MR. WESTERFELD:  Yes, Your Honor.

15         THE COURT:  Are you also satisfied that the evidence

16  would be sufficient to support a jury verdict of guilty as to

17  that count and as to your client if a reasonable jury were so

18  to conclude?

19         MR. WESTERFELD:  Yes, Your Honor.

20         THE COURT:  And you've so advised him, have you?

21         MR. WESTERFELD:  Yes.

22         THE COURT:  Ms. Maryan, I know you, too, will have

23  reviewed this evidence as to Mr. Watson.  Are you also

24  persuaded that the summary that's written here is an accurate

25  summary of the facts that could be adduced by the Government

35

1    if the matter went to trial with respect to Mr. Watson?

2              MS. MARYAN:  Yes, Your Honor.

3              THE COURT:  And that that evidence if presented to a

4    reasonable jury would support a conviction of Mr. Watson

5    beyond a reasonable doubt as to Count 23?

6              MS. MARYAN:  Yes, Your Honor.

7              THE COURT:  Have you so advised Mr. Watson?

8              MS. MARYAN:  I have, Judge.

9              THE COURT:  My own review -- well, let me just

10   circle back.

11             Ms. Evans, did you read the summary of the evidence

12   that was prepared with respect to you that you signed?

13             DEFENDANT EVANS:  Yes, ma'am.

14             THE COURT:  Is what's written there true as far as

15   you know?

16             DEFENDANT EVANS:  Yes, ma'am.

17             THE COURT:  Do you have any disagreement with those

18   facts?

19             DEFENDANT EVANS:  No, ma'am.

20             THE COURT:  Did you do what it says you did in that

21   written summary?

22             DEFENDANT EVANS:  Yes, ma'am.

23             THE COURT:  Ms. Brock Miller, did you read your

24   summary of the facts that underlie the charge against you?

25             DEFENDANT BROCK:  Yes, ma'am.

1          THE COURT:  Is it true as far as you know, what's

2   written there?

3          DEFENDANT BROCK:  Yes, ma'am.

4          THE COURT:  Do you understand that this is the

5   evidence that the Government would present to a jury if the

6   matter went to trial?

7          DEFENDANT BROCK:  Yes, ma'am.

8          THE COURT:  Do you have any quarrel with the facts

9   as they're stated there?

10          DEFENDANT BROCK:  No.

11          THE COURT:  Did you do what it says you did there?

12          DEFENDANT BROCK:  Yes, ma'am.

13          THE COURT:  Mr. Miller, did you read the summary of

14   the evidence that the Government has if the matter went to

15   trial against you on Count 23 -- or Count 6, I'm sorry?

16          DEFENDANT MILLER:  Yes, ma'am.

17          THE COURT:  Is what's written there true as far as

18   you know?

19          DEFENDANT MILLER:  Yes, ma'am.

20          THE COURT:  Do you have any disagreement with those

21   facts that are written there?

22          DEFENDANT MILLER:  No, I don't believe I do.

23          THE COURT:  Did you do what it says you did in that

24   summary?

25          DEFENDANT MILLER:  Yes, ma'am.

1          THE COURT:  Okay.  Mr. Henson, did you review the

2    summary of the evidence that the government has adduced with

3    respect to the charge against you in Count 23?

4          DEFENDANT HENSON:  Correct, Your Honor.

5          THE COURT:  Do you have any disagreement or a

6    quarrel with what's written there?

7          DEFENDANT HENSON:  No.

8          THE COURT:  Did you do what it says you did there,

9    sir?

10          DEFENDANT HENSON:  Yes, ma'am.

11          THE COURT:  And Mr. Watson, did you review the

12    summary of the evidence that was presented?

13          DEFENDANT WATSON:  Yes.

14          THE COURT:  Do you have any disagreement or quarrel

15    with those facts that are laid out there?

16          DEFENDANT WATSON:  No.

17          THE COURT:  Did you do what it says you did in that

18    summary?

19          DEFENDANT WATSON:  Yes.

20          THE COURT:  My own review of the written summaries

21    of the facts that underlie the charges respectively against

22    each of you allows me to conclude that if this evidence were

23    presented to a jury, it would suffice to support a verdict of

24    guilty beyond a reasonable doubt as to the charge against each

25    of you to which you've indicated your intention to plead.  So

1  I accept these stipulated summaries as sufficient to allow the

2  remaining procedures to go forward with respect to accepting

3  your plea.

4           So having made these explanations to each of you and

5  having considered your responses to my explanations today,

6  having also now reviewed the facts that the Government has

7  pulled together and would be prepared to adduce if the matter

8  went to trial, I put the question to each of you now,

9  Ms. Evans, how do you plead to the charge against you in

10 Count 1, guilty or not guilty?

11          DEFENDANT EVANS:  Guilty.

12          THE COURT:  Ms. Brock Miller, how do you plead to

13 the charge against you in Count 6, guilty or not guilty?

14          DEFENDANT BROCK:  Guilty.

15          THE COURT:  Mr. Miller, how do you plead to the

16 charge against you in Count 6, guilty or not guilty?

17          DEFENDANT MILLER:  Guilty.

18          THE COURT:  Mr. Henson, how do you plead to the

19 charge against you in Count 23, guilty or not guilty?

20          DEFENDANT HENSON:  Guilty.

21          THE COURT:  And, Mr. Watson, how do you plead to the

22 charge against you in Count 23, guilty or not guilty?

23          DEFENDANT WATSON:  Guilty.

24          THE COURT:  It is the finding of the Court in the

25 cases of United States of America versus Samantha Evans,

1    Leeann Brock Miller, Joshua Miller, Michael Henson, and

2    Stanley Watson, that each defendant is fully competent and

3    capable of entering an informed plea, that each defendant is

4    aware of the nature of the charges and the consequences of the

5    plea, and that each plea of guilty is a knowing and voluntary

6    plea supported by an independent basis in fact containing each

7    of the essential elements of each of these offenses.

8              Each plea is therefore accepted, and Ms. Evans is

9    found guilty of the charge against her in Count 1; Ms. Brock

10   Miller is found guilty of the charge against her in Count 6;

11   Mr. Joshua Miller is found guilty of the charge against him in

12   Count 6; Mr. Henson is found guilty of the charge against him

13   in Count 23; and Mr. Watson is found guilty of the charge

14   against him in Count 23.

15             That completes the matter that was to be addressed

16   at this session of the court.  The next time we meet will be

17   at a sentencing hearing.  It's not likely to be as many

18   defendants because it's a more individualized undertaking.

19             After this hearing, you will each meet with the

20   probation office, or probation officer, who will take down

21   information in order to prepare a Presentence Investigation

22   Report.  That report lays out all of the information that the

23   Court will need in order to have a clear understanding of the

24   circumstances of your case, and the history and

25   characteristics of you, what led up to this particular offense

1    and so forth.  So that when the final sentence is imposed, it

2    will be a reasonable sentence as the law measures it and as

3    the law requires.

4         So this is a very important next stage of the

5    proceedings, and you should devote yourselves to it with the

6    help of your lawyers with the same care that you have coming

7    into this hearing.  So don't give it short shrift.  It will

8    matter when it comes time for us to fashion a sentence.

9         Your lawyers will be of great assistance to you at

10   this next stage as well, so be sure to include them, and tell

11   them the things that they ask you about so that they can put

12   that information in the report, and make sure that I know at

13   the time of sentencing all the things that you want me to know

14   and think about and take into account as well.

15        There were a couple of other procedural matters.

16   Let's see, a motion to dismiss, did you want to withdraw that?

17        MS. MARYAN:  We do, Your Honor.

18        THE COURT:  And do you --

19        MS. MARYAN:  We do withdraw that motion.

20        THE COURT:  I'll show that motion withdrawn.  And I

21   think that's the only other procedural matter with respect to

22   these defendants that's pending.

23        Do you know of anything else, Mr. Glickman?

24        MR. GLICKMAN:  I don't, Your Honor.

25        THE COURT:  Do any of you lawyers have any other

1  matters to raise with me at this time?

2        MR. WESTERFELD:  No, Your Honor.

3        THE COURT:  Very good.  Well, we've completed

4  today's hearing.  So the marshal will take custody of you and

5  return you to wherever it was you were waiting, and I'll thank

6  you lawyers, each one and as a group.

7        That completes the matter.  We're in recess.  We're

8  adjourned now.

9        COURT CLERK:  All rise --

10       THE COURT:  Mr. Glickman, let me ask you this

11  question.  I have a motion to continue that was filed by

12  Mr. Thar.  Do you intend to respond to that?

13       MR. GLICKMAN:  My position is within that motion,

14  Your Honor.

15       THE COURT:  Okay.  I'll read it more carefully.  I

16  just got it before the hearing.

17       MR. GLICKMAN:  Thank you, Your Honor.

18       THE COURT:  Okay, good morning, all.

19       DEFENDANT HENSON:  Good morning, good afternoon and

20  goodnight.

21              (Court adjourned at 11:08 a.m.)

22

23

24

25

CERTIFICATE OF COURT REPORTER


I, Laura Howie-Walters, hereby certify that the foregoing is a true and correct transcript from reported proceedings in the above-entitled matter.


/S/LAURA HOWIE-WALTERS   October 8th, 2014

LAURA HOWIE-WALTERS, FCRR/RPR/CSR
Official Court Reporter
Southern District of Indiana
Indianapolis Division